IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER M. SUNWALL,

        Plaintiff,

      v.

CAROLYN L. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

Case No. 3:14-cv-01034-PA

**ORDER**

---

**PANNER, District Judge**:

    Plaintiff Heather M. Sunwall brings this action for judicial review of the Commissioner's final decision to deny her applications for benefits under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand for an immediate award of benefits.

### PROCEDURAL HISTORY

    In 2011, Plaintiff filed the applications at issue here for a period of disability, disability insurance benefits, and supplemental security payments. Plaintiff alleges disability beginning in August 2010 from bipolar disorder, depression, anxiety, bilateral knee impairments, and lumbar pain. After Plaintiff's applications were denied initially and on reconsideration, Plaintiff received

1  –  ORDER

a hearing before an ALJ. In March 2013, the ALJ issued a decision finding Plaintiff not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks judicial review.

## THE ALJ'S FINDINGS

Plaintiff has a high school education and was 27 years old on the alleged disability onset date. At step two of the five-step sequential evaluation process, the ALJ found Plaintiff has the severe impairments of bipolar disorder and degenerative joint disease in her right knee. Admin. R. (Tr.) 22; *see* 20 C.F.R. § 404.1520(a)(4) (describing sequential process for determining disability). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. The ALJ found Plaintiff had the residual functional capacity to perform light work, with limitations. At step four, the ALJ found Plaintiff could not return to her past relevant work as a call center customer service representative or as a retail business assistant manager. At step five, after consulting with the vocational expert who testified at the hearing, the ALJ found Plaintiff could perform jobs in the national economy such as laundry folder, silver wrapper, price marker, surveillance system monitor, and escort vehicle driver. Tr. 34. The ALJ concluded that Plaintiff was not disabled.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if the decision is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir.1995). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

## DISCUSSION

I conclude that the ALJ erred at step three of the sequential evaluation process in finding that Plaintiff's bipolar disorder and gambling addiction did not meet or equal the required severity

2  -  ORDER

to show disability. "If a claimant has an impairment or combination of impairments that meets or

equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled

at step three." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)).

Because step three is dispositive, I do not address other issues raised by Plaintiff, such as the

physical limitations caused by her knee impairment.

## I. Plaintiff Meets or Equals the Listing for Affective Disorders

### A. Listing 12.04 for Affective Disorders

Plaintiff contends that the combination of her bipolar disorder and gambling addiction

meets the listing for Affective Disorders, 12.04. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04

(Listing 12.04).    Under Listing 12.04, one category of affective disorders is "[b]ipolar syndrome

with a history of episodic periods manifested by the full symptomatic picture of both manic and

depressive syndromes (and currently characterized by either or both syndromes)." 20 C.F.R. Part

404, Subpt. P, App. 1, § 12.04A, § 3. The ALJ found that Plaintiff suffers from the severe

impairment of bipolar disorder. Tr. 22.

Paragraph C of Listing 12.04 provides that a claimant suffering from an affective disorder

may establish the required severity by showing:

> Medically documented history of a chronic affective disorder of at least 2 years'
> duration that has caused more than a minimal limitation of ability to do basic work
> activities, with symptoms or signs currently attenuated by medication or
> psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even
> a minimal increase in mental demands or change in the environment would be
> predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly
> supportive living arrangement, with an indication of continued need for such an
> arrangement.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.04C.

### B. The ALJ's Finding on Listing 12.04 Is Erroneous

Here, Plaintiff contends that she meets the requirements of Paragraph C of Listing 12.04

because she has a medically documented history of bipolar disorder for at least two years' duration, causing more than minimal limitation of the ability to work, and has suffered "[r]epeated episodes of decompensation, each of extended duration." In ruling that Plaintiff did not met Paragraph C of Listing 12.04, the ALJ stated:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. However, the evidence fails to establish the presence of the "paragraph C" criteria as the records do not show a mental impairment of at least two years in duration more than minimally limiting the ability to do basic work activity, with symptoms attenuated by medication or treatment, with repeated episodes of decompensation for extended periods . . . .

Tr. 24. The ALJ quotes Paragraph C without providing any reasoning or referring to any supporting evidence in the record. This is error because at step three of the process the ALJ "must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

The Commissioner attempts to supply the reasoning that is missing from the ALJ's findings at step three. *See, e.g.*, Def.'s Resp. 7 ("It was reasonable for the ALJ to conclude that these [hospital] admissions did not qualify as 'repeated episodes of decompensation'"). But on judicial review, this court is limited to the reasons asserted by the ALJ. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). In any event, the Commissioner's post-hoc justifications for the ALJ's conclusory rulings are not persuasive.

### C. Substantial Evidence Shows Plaintiff Meets or Equals Listing 12.04C

#### 1. Medically Documented History of Chronic Affective Disorder

To show the requisite level of severity for Listing 12.04C, the claimant first must show a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." Listing 12.04C. Here, the ALJ found that Plaintiff's bipolar disorder was a severe impairment, and the record shows Plaintiff has suffered from bipolar disorder for at least two years. She was hospitalized for a manic episode from September 1, 2006 to November 1, 2006, and she continued to be diagnosed with bipolar

4  –  ORDER

disorder throughout the relevant period. Tr. 208, Tr. 561.

Despite Plaintiff's history of hospitalizations for psychotic episodes, the ALJ found that when Plaintiff "is compliant with treatment, including with prescribed medications, her condition is stable and she is highly functional. Her condition changes only when she is noncompliant with treatment." Tr. 31. This finding is not supported by substantial evidence.

The ALJ does not acknowledge the inherently cyclical nature of bipolar disorder. "Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The regulations themselves provide, "Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(2). Because bipolar disorder is variable, an ALJ may not "improperly single[] out a few periods of temporary well-being from a sustained period of impairment" to discredit a claimant. *Garrison*, 759 F.3d at 1018; *Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1990) (ALJ may not "cherry-pick" observations without considering context). When "a person who suffers from severe panic attacks, anxiety, and depression" improves, that "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). "Occasional symptom-free periods -- and even the sporadic ability to work -- are not inconsistent with disability." *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995).

Plaintiff suffered manic or depressive episodes at times even while she was taking the multiple medications she was prescribed for the disorder. For example, treating physician Dr. Soroush Mohandessi, a staff psychiatrist at Cascadia Behavioral Healthcare (Cascadia), reported in May 2011 that Plaintiff was experiencing "intermittent hypomania" despite being in compliance with her medication regime. Tr. 310. Dr. Mohandessi attributed Plaintiff's symptoms to "cyclic

and season change." Tr. 310.

Furthermore, compliance with the medication regime was difficult because of the serious

side-effects Plaintiff suffered. *See, e.g.*, Tr. 25 (medications caused "the shakes"); Tr. 287

(Klonopin linked to depression and memory issues); Tr. 449 (Zyprexa caused drowsiness); Tr. 302

(Abilify caused "acute dystonic reaction" resulting in neck and facial stiffness); Tr. 561 (side-

effects of medications included dizziness, drowsiness, and upset stomach). Plaintiff's treating

physicians were continually adjusting her medications to find a balance.

On top of the serious side-effects caused by medications, the disease itself impaired

Plaintiff's ability to comply with the medication regime. As this court has noted in addressing

another plaintiff who suffered from bipolar disorder, the plaintiff's "poor judgment generally—and

his inconsistent compliance with medications specifically—is a manifestation of his mental

illness." *Meacham v. Astrue*, No. 09-cv-6002-HA, 2010 WL 3732255, at *6 (D. Or. Sept. 20,

2010). I conclude that Plaintiff's bipolar disorder was not fully controlled by the prescribed

medications she took.

### 2. Repeated Episodes of Decompensation for Extended Periods

Turning to the next requirement to meet Paragraph C of Listing 12.04, Plaintiff must show

"repeated episodes of decompensation for extended periods." The regulations define these terms

as follows:

> 4. *Episodes of decompensation* are exacerbations or temporary increases in
> symptoms or signs accompanied by a loss of adaptive functioning, as manifested by
> difficulties in performing activities of daily living, maintaining social relationships,
> or maintaining concentration, persistence, or pace. Episodes of decompensation
> may be demonstrated by an exacerbation in symptoms or signs that would ordinarily
> require increased treatment or a less stressful situation (or a combination of the
> two). Episodes of decompensation may be inferred from medical records showing
> significant alteration in medication; or documentation of the need for a more
> structured psychological support system (e.g., hospitalizations, placement in a
> halfway house, or a highly structured and directing household); or other relevant
> information in the record about the existence, severity, and duration of the episode.
>
> The term *repeated episodes of decompensation, each of extended duration* in these
> listings means three episodes within 1 year, or an average of once every 4 months,
> each lasting for at least 2 weeks. If you have experienced more frequent episodes of
> shorter duration or less frequent episodes of longer duration, we must use judgment

6  -  ORDER

to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C, § 4 (assessment of severity).

Plaintiff was hospitalized three times between August 2011 and August 2012. Two of the hospitalizations were involuntary, resulting from Plaintiff's bipolar disorder causing severe psychotic episodes. The other hospitalization was voluntary when Plaintiff sought residential treatment for her gambling addiction. The ALJ did not explain why Plaintiff's three hospitalizations within a year did not qualify as episodes of decompensation under the regulations. I conclude Plaintiff has shown that these three hospitalizations were repeated episodes of decompensation, each of extended duration, showing that Plaintiff meets or equals Listing 12.04.

**Plaintiff's first hospitalization** during the relevant period ran from August 23, 2011 to August 30, 2011. Shortly before this hospitalization, Plaintiff had been evicted by her mother for stealing and gambling. Tr. 392. The night of August 22, 2011, Plaintiff was "very disorganized," and displayed "very bizarre behavior," causing her mother to call the police. Tr. 385, 392. The next morning, on August 23, 2011, Plaintiff went to a car dealership and became agitated when her credit card was denied, throwing objects and kicking employees. Tr. 377. She then wandered into a busy street to another dealership, where she continued her violent behavior, damaging a car. Police brought Plaintiff to the psychiatric ward of the Portland Adventist Hospital.

Dr. Jon M. Messinger, the attending psychiatrist, reported that at the hospital, Plaintiff "presented with rapid, disorganized speech, and with yelling and threatening behavior." Tr. 376. She "required frequent redirection due to intrusive, loud, and poorly controlled behavior." Tr. 376.

On admission, Plaintiff's Global Assessment of Functioning (GAF) score was 25, indicating behavior "considerably influenced by delusions or hallucinations," or serious impairment in communication or judgment, or inability to function in almost all areas. Pl.'s Br. at 9 n.19 (citing Diagnostic and Statistical Manual of Mental Disorders-IV (DSM-IV)). When Plaintiff was discharged, her GAF score was only slightly improved, to 30. Dr. Messinger reported

that Plaintiff "was referred for court commitment hearing due to ongoing mania, which was quite severe." Tr. 376. The record does not disclose where Plaintiff was housed after she was discharged on August 30, 2011, although her GAF score of 30 indicates a person with serious cognitive problems.

In her brief, the Commissioner notes that this hospitalization was for nine days, and so was shorter than the regulation's two-week benchmark to show that an episode of decompensation was of "extended duration." Def.'s Resp. 8. But the regulations are not inflexible, providing that "less frequent episodes of longer duration . . . may be used to substitute for" episodes of shorter duration. Plaintiff's other two hospitalizations were of longer duration: from September 12, 2011 to October 18, 2011, and from June 25, 2012 to August 16, 2012. Although this episode lasted less then 14 days, it was very severe.

**Plaintiff's second hospitalization** began September 12, 2011, when police brought Plaintiff to the psychiatric ward of Portland Adventist Hospital. Plaintiff had been detained in the Multnomah County Jail for stealing dogs from a roommate and using the dogs to threaten employees at an automobile dealership. Tr. 31. At the jail, Plaintiff was out of control, throwing food and water at jail employees and refusing to eat or take medication. Plaintiff was committed by the court. She remained at Portland Adventist until October 18, 2011.

Dr. Ronald E. Cafferky, the attending psychiatrist, reported that Plaintiff was "acutely manic, impulsive, and in my opinion an acute danger to herself and others." Tr. 396. Dr. Cafferky diagnosed bipolar disorder, "manic with psychotic features." Tr. 396. Dr. Cafferky noted that the warrant from the jail stated that Plaintiff would "further decompensate" unless hospitalized. Tr. 395. At discharge on October 18, 2011, Plaintiff had improved, and was cooperative and compliant with medications. Her GAF score was 45, which indicates serious symptoms or serious impairment in social, occupational, or school functioning. Pl.'s Br. 9 n.21.

Plaintiff was discharged to the Telecare Recovery Center (Telecare), a residential treatment facility, while still under commitment status, where she stayed until November 8, 2011. She was

8  –  ORDER

then discharged to her mother's house. Tr. 450.  I agree with Plaintiff that her stay at Telecare should be included in determining the duration of this decompensation episode, so the episode of decompensation lasted from the initial admission on September 12, 2011 to release from Telecare on November 8, 2011.

**Plaintiff's third hospitalization** lasted from June 25, 2012 to August 16, 2012, at Bridgestone Recovery Services.  Plaintiff voluntarily committed herself to treat her gambling addiction.  Plaintiff had been receiving treatment for her gambling addiction, but frequently relapsed.  The ALJ characterized Plaintiff's gambling addiction as "claimant's major problem," although he did not find it was a severe impairment.  Cascadia, which treated Plaintiff's gambling addiction for several years, characterized her "pathological gambling" as a "co-occuring disorder with bipolar disorder." Tr. 536 (Oct. 30, 2012 evaluation).  In November 2010, Cascadia found that Plaintiff "meets criteria for a DSM-IV diagnosis of . . . Pathological Gambling." Tr. 276.

The ALJ noted Plaintiff's hospitalization at Bridgestone Recovery Services but gave no explanation for failing to determine whether this hospitalization was an episode of decompensation.  A claimant's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d at 829  (citations and quotations marks omitted).  Before Plaintiff admitted herself to the hospital, her pathological gambling caused her to lose jobs because she embezzled from employers, and caused her mother to evict her more than once for stealing.

In her response brief, the Commissioner provides a post-hoc rationale for the ALJ's failure, arguing that "voluntarily entering a gambling treatment program does not satisfy [the definition of decompensation] because a patient seeks treatment to improve functioning, not necessarily because she has lost the ability to function outside an inpatient setting." Def.'s Resp. 8.  The Commissioner's explanation is not persuasive.  The regulation provides that "[e]pisodes of decompensation may be inferred from . . . documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly

structured and directing household)."  20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C, § 4.  The regulations do not require that hospitalization or other treatment be involuntary to qualify as an episode of decompensation.  I conclude that Plaintiff's voluntary admission to a treatment center qualifies as an episode of decompensation.

These three hospitalizations qualify as repeated episodes of decompensation of extended duration.  I conclude that Plaintiff's bipolar disorder and gambling addiction, considered in combination, meet or equal Listing 12.04 for affective disorders.

## II.  Remand for Immediate Award of Benefits

This court has discretion to remand for further proceedings or for immediate payment of benefits.  *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000).  A remand for an award of benefits is appropriate where no useful purpose would be served by further proceedings, or when the record is fully developed.  *Id.* at 1179.

The record here establishes that Plaintiff meets Listing 12.04.  There is no reason to remand for further administrative proceedings.  *See Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1137-38 (9th Cir. 2011).

## CONCLUSION

The Commissioner's decision is reversed and this case is remanded for the immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this **2/** day of January, 2016.

OWEN M. PANNER
U.S. DISTRICT JUDGE

10 –  ORDER